**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.


THREE H, LLC, a Colorado corporation,

       Plaintiff,

   v.

EMERGENSEE, INC., a Delaware corporation

       Defendant.

---

### COMPLAINT AND JURY DEMAND

---

Plaintiff THREE H, LLC, files this Complaint for patent infringement against Defendant EmergenSee, Inc., and alleges as follows:

### PARTIES

1.    Plaintiff THREE H, LLC, ("Plaintiff" or "THREE H"), is a Colorado limited liability corporation, having a principal place of business at 5123 East County Road 52, Fort Collins, CO 80524.

2.    Defendant EMERGENSEE, INC., ("defendant" or "ESI") is a Delaware corporation, having a principal place of business at 1620 Minden Lane, Malvern, PA 19355.

## JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States of America. *See* 35 U.S.C. 271. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

4.      Personal jurisdiction over the Defendant in Colorado is proper under C.R.S. § 13-1-124 and the United States Constitution because Defendant is transacting business in this jurisdiction.

5.      In addition, this Court has personal jurisdiction over the Defendant because it has knowingly and actively engaged in acts in the forum state that have infringed, will infringe, and/or aided and abetted in the direct and/or indirect infringement of claims 1-16 of United States Patent No. 9,378,532. Additionally, this Court has personal jurisdiction over Defendant because it has knowingly and actively engaged in acts in the forum state that contributed to the infringement by others in this District, and/or induced the infringement by others in this District, of claims 1-16 of United States Patent No. 9,378,532.

6.      Specifically, this Court has personal jurisdiction over Defendant based upon Defendant's sale and/or transaction of business in the State of Colorado and sufficient minimum contact with the State of Colorado, and with the District of Colorado, in particular. Upon information and belief, Defendant has transacted business within this district, has committed tortious acts within this district, has committed tortious injury to THREE H in this district, regularly does and/or solicits business in this district, derives revenue from goods used or consumed in this district, engages in other persistent courses of conduct in this district, and is subject to the jurisdiction of this Court.

7. Venue in this Court is proper under 28 U.S.C. §§ 1391(b)–(c) & 1400(b) because Defendant is subject to personal jurisdiction in this District, and therefore deemed a resident of this judicial district; and/or a substantial part of the events giving rise to the claim occurred in this District.

## Patent-In-Suit

8. The patent-in-suit is United States Patent No. 9,378,532 (the "'532 Patent") entitled "Safety Monitoring Method and System." (Exhibit A).

9. THREE H is the current owner by assignment of all rights, title, and interest in and to the '532 Patent.

10. The '532 Patent is a continuation of US Patent Application No. 12/741,817, filed May 6, 2010, and issued as US Patent No. 8,552,855, which is a United States National Phase Application of International Application No. PCT/US2008/082661 filed on November 6, 2008, which claims priority to and the benefit of United States Provisional Application Nos. 61/024,736 and 60/985,846, filed January 30, 2008 and November 6, 2007, respectively.

## Background

11. The '532 Patent is directed to systems and methods of monitoring a person's safety, in particular a person's safety within a specific geographic area.

12. Defendant ESI makes, uses, sells and offers for sale a system, generally referred to as EnergenSee® or otherwise (hereinafter "Infringing System") for monitoring a person's safety (*See e.g.* Exhibit F) that infringes at least one claim of the '532 Patent.

13. Defendant's Infringing System provides a server that: 1) tracks and provides emergency notifications for mobile devices; 2) defines the virtual boundaries of a geographic area to be monitored; 3) receives a communication from a mobile device indicating that the user is in

an emergency situation and which also includes the geographic location of the mobile device; 4) determines the GPS coordinates and the defined boundaries of the monitored geographic area where the mobile device is located; and 5) displays the location of the mobile device on an image of the monitored geographic area based on the GPS coordinates. (*See* Exhibit B-D)

14.    Defendant's Infringing System also provides a server that: 1) tracks and provides emergency notifications for mobile devices; 2) defines the virtual boundaries of one or more geographic areas to be monitored; 3) establishes a unique code for each monitored geographic area and associates that unique code with specific monitoring personnel who are to be notified in the event an emergency occurs within the boundaries of that geographic area and where each unique code is associated with a specific monitoring personnel; 4) receives a first communication from a mobile device indicating that the user has had an emergency situation and where the communications also includes GPS coordinates indicating the geographic location of the mobile device and at least one unique code; 5) extracts the unique code from the first communication; 6) determines the specific monitoring personnel associated with the extracted unique code; and 7) notifies the determined monitoring personnel of the user's emergency indicated by the first communication.

15.    Defendant sells and offers for sale its Infringing System, as a "Personal Security System" stating that the:

> "EmergenSee App alerts your Pre-Set Safety Contacts with Realt-Time [sic] "Incident GPS Location and Movements". If you need to run away from your situation, safety contacts receive a google map with your started gps and breadcrumbs tracking your movements. Your safety contacts are able to follow, even if you're on the move."

(Exhibit E).

16.    Defendant's website specifically states that as part of its Infringing System it sells and/or offers for sale specific "Geo-Fence Technology." Defendant has publicly stated that:

"EmergenSee's geo-fence is an invisible fencing (virtual perimeter) around pre-defined boundaries, like a University or Corporate Campus Partner, Hospital, Mall, City and State. When EmergenSee is activated within the geo-fence location, the user's live video and gps incident is sent directly to the EmergenSee Professional Security Partner Command Center on-site of that geo-fenced area, dramatically reducing response time. For larger communities, set-up multiple geo-fences – Direct EmergenSee Incidents to First Responder Devices closest to that geo location.."

(Exhibit C).

17.     Upon information and belief, Defendant made, used, sold, offered for sale and continues to offer for sale an Infringing System in the United States that:

- provides a server that tracks and provides emergency notifications for mobile devices;

- defines the virtual boundaries of a geographic area to be monitored;



(Exhibit C)

- receives a communication from a mobile device indicating that the user is in an emergency situation and which also includes the geographic location of the mobile device;



(Exhibit B)

- determines the GPS coordinates and the defined boundaries of the monitored geographic area where the mobile device is located; and



(Exhibit B)

- displays the location of the mobile device on an image of the monitored geographic area based on the GPS coordinates.



(Exhibit B)

18.     Upon information and belief, all, or substantially all of the aforementioned steps have been offered and/or executed in Colorado by users of Defendant's Infringing System or others.

19.     Upon information and belief, Defendant made, used, sold, offered for sale and/or continues to offer for sale an Infringing System in the United States that:

- provides a server that tracks and provides emergency notifications for mobile devices;

-   defines a plurality of different virtual boundaries of a geographic area to be monitored;



(Exhibit D)

-   establishes a unique code for each monitored geographic area and associates that unique code with specific monitoring personnel who are to be notified in the event an emergency occurs within the boundaries of that geographic area;



- receives a communication from a mobile device indicating that the user has had an emergency situation including GPS coordinates indicating the geographic location of the mobile device and a unique code;



(Exhibit I)

- extracts the unique code from the communication from the mobile phone;

- determines the specific monitoring personnel associated with the extracted unique code; and



(Exhibit D)

- notifies the determined monitoring personnel of the user's emergency indicated by the first communication.



(*See e.g.* Exhibit B; *see also* Exhibits C-E).

20.     Upon information and belief, Defendant made, used, sold, offered for sale and/or continues to offer for sale an Infringing System in the United States that:

>   -   stores in a memory of a server a profile containing information about a user of that mobile device that, in response to receiving the communication from the mobile device, retrieves the profile stored for that mobile device and displays the information contained in the profile such as a user's name, picture, health records, and class schedule.



(Exhibit D)

21.     Upon information and belief, Defendant made, used, sold, offered for sale and/or continues to offer for sale an Infringing System in the United States that:

- in response to receiving the communication from a mobile device, automatically sends a communication to other mobile devices within the defined boundaries of a geographic area indicating that an emergency situation is occurring and providing instructions to keep away from the location of the mobile device from which the communication was received; and/or

- causes the server to broadcast an alert or other message to all mobile devices within the defined boundaries of the geographic area.



(Exhibit D)

22.     Upon information and belief, Defendant made, used, sold, offered for sale and/or continues to offer for sale an Infringing System in the United States that:

- receives successive communications from a mobile device over time with updated GPS coordinates in each communication;

- calculates coordinates, such as a heading and speed, of the mobile device from the received GPS; and

- reports the heading and speed of the mobile device to an emergency responder.



(Exhibit D)

23.     Upon information and belief, Defendant made, used, sold, offered for sale and/or continues to offer for sale an Infringing System in the United States that:

- defines virtual boundaries of the geographic area that comprise a set of boundaries that define the physical boundaries of the geographic area, such as a university campus.



(Exhibits D; *see also* Exhibits J-K)

24.     Upon information and belief, Defendant made, used, sold, offered for sale and/or continues to offer for sale an Infringing System in the United States that:

- defines virtual boundaries of the geographic area that comprise a defined radius around a central location within the geographic area.



(Exhibit C)

25.     Upon information and belief, all, or substantially all of the aforementioned steps have been and/or are currently being offered and/or executed in Colorado.

26.     Upon information and belief, Defendant made, used, sold, offered for sale and/or continues to offer for sale an Infringing System in the United States that uses a server that has: 1) a processor; 2) a computer readable storage medium having stored computer executable instructions where the computer-executable instructions define a server application executable by the processor.

27.     Upon information and belief, Defendant made, used, sold, offered for sale and/or continues to offer for sale an Infringing System in the United States that uses a server that has: 1) a processor or the equivalent thereof; 2) a computer readable storage medium having stored computer executable instructions or the equivalent where the computer-executable instructions define a server application executable by the processor or the equivalent thereof.

28.     Upon information and belief, Defendant made, used, sold, offered for sale and/or continues to offer for sale an Infringing System in the United States that uses a server that performs all the steps of at least one claim of the '532 Patent.

29.     Upon information and belief, Defendant made, used, sold, offered for sale and/or continues to offer for sale an Infringing System in the United States that uses a server that receives a communication from a mobile device in Colorado.

30.     Upon information and belief, Defendant made, used, sold, offered for sale and/or continues to offer for sale an Infringing System in the United States that uses an a server that receives a communication from a mobile device in Colorado by a user that downloaded the EmergenSee® application onto a mobile phone in Colorado.

31.     Upon information and belief, Defendant made, used, sold, offered for sale and/or continues to offer for sale an Infringing System in the United States that uses a cloud based server that performs all the steps of at least one claim of the '532 Patent.

32.     Upon information and belief, Defendant provides periodic after-sale software updates to its customers. Upon further information and belief, these software updates can be automatically and/or manually downloaded into a user's mobile device or other computer system.

33.     Upon information and belief, Defendant, and at least one or more third parties jointly use an Infringing System that infringes claims 1-16 of the '532 Patent. (*See i.e.* Exhibits J and K)

34.     Upon information and belief, Defendant, and at least one or more third parties jointly use an Infringing System that infringes at least one claim of the '532 Patent. (*See i.e.* Exhibits J and K)

35.     Upon information and belief, Defendant, and at least one or more third parties jointly use a server that performs all the steps of claims 1-16 of the '532 Patent. (*See i.e.* Exhibits J and K)

36.     Upon information and belief, Defendant, and at least one or more third parties jointly use a server that performs all the steps of at least one claim of the '532 Patent. (*See i.e.* Exhibits J and K)

37.     Defendant integrates its Infringing System into existing third party security infrastructure through its "EmergenSee's Professional Security Partner Solution," and/or its "24/7 Professional Service Monitoring Service," and/or its "Tier 4 Homeland Security Certified Monitoring Center," such that all steps of claims 1-16 of the '532 Patent are performed by a third party server. (*See e.g.* Exhibit D)

38.     Defendant integrates its Infringing System into existing third party security infrastructure through its "EmergenSee's Professional Security Partner Solution," and/or its "24/7 Professional Service Monitoring Service," and/or its "Tier 4 Homeland Security Certified Monitoring Center," such that all steps of at least one claim of the '532 Patent are performed by a third party server. (*See e.g.* Exhibit D)

39.     Upon information and belief, Defendant integrates its Infringing System into existing third party security infrastructure through its "EmergenSee's Professional Security Partner Solution," and/or its "24/7 Professional Service Monitoring Service," and/or its "Tier 4 Homeland Security Certified Monitoring Center," such that all steps of claims 1-16 of the '532 Patent are performed by a third party server that is under Defendant's control.

40.     Upon information and belief, Defendant integrates its Infringing System into existing third party security infrastructure through its "EmergenSee's Professional Security Partner Solution," and/or its "24/7 Professional Service Monitoring Service," and/or its "Tier 4 Homeland Security Certified Monitoring Center," such that all steps of at least one claim of the '532 Patent are performed by a third party server that is under Defendant's control. (*See e.g.* Exhibit D).

41.     Upon information and belief, Defendant integrates its Infringing System into existing third party security infrastructure through its "EmergenSee's Professional Security Partner Solution," and/or its "24/7 Professional Service Monitoring Service," and/or its "Tier 4 Homeland Security Certified Monitoring Center," such that one or more steps of at least one claim of the '532 Patent are performed by a third party server while the remaining steps are performed by the Defendant's server. (*See e.g.* Exhibit D).

42.     Upon information and belief, Defendant integrates its Infringing System into existing third party security infrastructure through its "EmergenSee's Professional Security Partner

Solution," and/or its "24/7 Professional Service Monitoring Service," and/or its "Tier 4 Homeland Security Certified Monitoring Center," such that one or more steps of at least one claim of the '532 Patent are performed by the Defendant's server while the remaining steps are performed by the a third party server. (*See e.g.* Exhibit D).

43.     Upon information and belief, Defendant integrates its Infringing System into existing third party security infrastructure through its "EmergenSee's Professional Security Partner Solution," and/or its "24/7 Professional Service Monitoring Service," and/or its "Tier 4 Homeland Security Certified Monitoring Center," such that Defendant directs and/or controls the performance of all steps of claims 1-16 of the '532 Patent by a third party server. (*See e.g.* Exhibit D). Upon information and belief, Defendant's control over a third parties performance and/or server is pursuant to a contractual relationship.

44.     Upon information and belief, Defendant integrates its Infringing System into existing third party security infrastructure through its "EmergenSee's Professional Security Partner Solution," and/or its "24/7 Professional Service Monitoring Service," and/or its "Tier 4 Homeland Security Certified Monitoring Center," such that Defendant directs and/or controls the performance of all steps of at least one claim of the '532 Patent by a third party server. (*See e.g.* Exhibit D). Upon information and belief, Defendant's control over a third parties performance and/or server is pursuant to a contractual relationship.

45.     Upon information and belief, Defendant integrates its Infringing System into existing third party security infrastructure through its "EmergenSee's Professional Security Partner Solution," and/or its "24/7 Professional Service Monitoring Service," and/or its "Tier 4 Homeland Security Certified Monitoring Center," such that Defendant directs and/or controls the performance of at least one step of claims 1-16 of the '532 Patent by a third party server. (*See e.g.*

Exhibit D). Upon information and belief, Defendant's control over a third parties performance and/or server is pursuant to a contractual relationship.

46.     Upon information and belief, Defendant integrates its Infringing System into existing third party security infrastructure through its "EmergenSee's Professional Security Partner Solution," and/or its "24/7 Professional Service Monitoring Service," and/or its "Tier 4 Homeland Security Certified Monitoring Center,"  such that Defendant and at least one third party enter into a joint enterprise and/or an agency relationship to provide the Infringing System to customers of the third party. Upon further information and belief, through its "EmergenSee's Professional Security Partner Solution" and/or its "24/7 Professional Service Monitoring Service," and/or its "Tier 4 Homeland Security Certified Monitoring Center," Defendant establishes the manner and timing of the third parties performance and/or use of its server. Upon information and belief, Defendant's control over the manner and timing of the third parties performance and/or use of its server is pursuant to a contractual relationship.

47.     Upon information and belief, Defendant conditions participation in, and/or use of its Infringing System by third parties, such as through its "EmergenSee's Professional Security Partner Solution," and/or its "24/7 Professional Service Monitoring Service," and/or its "Tier 4 Homeland Security Certified Monitoring Center," in whole or in part, such that the Defendant receives an economic benefit from the third parties infringing use of the Infringing System and/or server.

48.     Upon information and belief, Defendant has provided, and continues to provide maintenance, installation and integration, training, after-sales support, software updates and other support services, for its Infringing System sold to and operated by third parties.

49.     Upon information and belief, the software updates provided to third parties are: 1) highly specialized for their use with the Infringing System; 2) custom made for use with the Infringing System; and 3) is not a staple article or commodity of commerce suitable for any substantial noninfringing use.

50.     On September 9, 2016, R.A. Herickhoff, President of THREE H, sent a letter to Philip Reitnour, Chairmen of ESI, informing him personally of the existence of the '532 Patent as well as inviting ESI to consider entering into a mutually beneficial license agreement. Mr. Reitnour was further advised that, unlike other civil remedies, remedies for violation of intellectual property rights "are not limited by the corporate shield" (Exhibit G).

51.     On or about late September 2016, Mr. Reitnour communicated with Plaintiff, indicating that ESI had no interest in licensing the '532 Patent.

52.     On November 9, 2016, THREE H sent yet another letter, this time through its patent counsel, to Steven Samuels, ESI's counsel of record, informing him of the existence of the '532 Patent, as well as again inviting ESI to enter into good faith licensing negotiations. No response was received (Exhibit H).

53.     On information and belief, ESI intends to, and has continued making, using, selling and/or offering for sale its Infringing System, despite its certain knowledge of the '532 Patent.

## COUNT I
### INFRINGEMENT OF THE '532 PATENT

54.     Plaintiff realleges and incorporates each of the preceding and subsequent paragraphs of this Complaint as if fully set forth herein.

55.     Plaintiff is the owner of all right, title, and interest in the '532 Patent, duly and properly issued by the United States Patent and Trademark Office.

56.     The '532 Patent is valid and enforceable, having been validly issued by the United States Patent and Trademark Office on June 28, 2016.

57.     Plaintiff has never granted ESI a license to practice any part of the '532 Patent.

58.     Plaintiff has never given ESI permission to practice any part of the '532 Patent.

59.     Upon information and belief, Defendant has infringed at least one claim of the '532 Patent by, among other things, performing, making, using, offering to sell, or selling in the United States, or importing into or exporting from the United States, products or services that are covered by one or more claims of the '532 Patent, on or after June 28, 2016.

60.     Upon information and belief, Defendant has infringed at least one claim of the '532 Patent by, among other things, performing, making, using, offering to sell, or selling in the United States, or importing into or exporting from the United States, products or services that are covered by at least one or more claims of the '532 Patent, on or after September 9, 2016.

61.     Upon information and belief, Defendant ESI has performed every element of at least one of claims 1-16, of the '532 Patent in the United States after June 28, 2016. Upon further information and belief, Defendant ESI continues to perform every element of at least one of claims 1-16, of the '532 Patent in the United States.

62.     Upon information and belief, Defendant ESI has contributed to and/or induced performance by others of every element of at least one of claims 1-16, of the '532 Patent in the United States after June 28, 2016. Upon further information and belief, Defendant ESI continues to contribute to and/or induce performance by others of every element of at least one of claims 1-16, of '532 Patent in the United States.

63.    Upon information and belief, Defendant ESI has infringed the '532 Patent by performing each and every step, or its equivalent, of at least one claim of the '532 Patent after June 28, 2016, in the United States.

64.    As of at least September 9, 2016, Defendant was provided definitive knowledge of the claims of the '532 Patent. (Exhibit G)

65.    Defendant's infringement at least after this point was deliberately done with knowledge of the '532 Patent.

66.    Upon information and belief, Defendant's infringement of at least one claim of the '532 Patent was deliberate and willful.

67.    Upon information and belief, Defendant lacks a good faith belief that their activities do not infringe at least one claim of the '532 Patent.

68.    Upon information and belief, Defendant has infringed at least one claim of the '532 Patent, by contributing to the direct infringement by third parties through its "EmergenSee's Professional Security Partner Solution." (Exhibit D)

69.    Defendant has infringed at least one claim of the '532 Patent, by knowingly and with specific intent, inducing direct infringement of the '532 Patent by third parties through its "EmergenSee's Professional Security Partner Solution." (Exhibit D)

70.    Upon information and belief, Defendant knew, or should have known that its actions induced acts that constitute infringement by third parties.

71.    Upon information and belief, Defendant knew, or should have known that its actions contributed to acts that constitute infringement by third parties.

72.    Defendant has profited through infringement of Plaintiff's '532 Patent.

73.     Plaintiff has expended significant labor, skill and money to develop the technological advancements embodied in the '532 Patent, among others.

74.     Defendant's wrongful actions have misappropriated business, sales, and licensing opportunities that were created by Plaintiff through expenditure of its time, labor and skill in developing its safety monitoring system.

75.     Defendant's wrongful actions have misappropriated Plaintiff's business and marketplace advantage and time, labor, and money expenditures in obtaining patent protection for its safety monitoring system.

76.     Defendant intends to continue to wrongfully capitalize on Plaintiff's commercial value and gain an unfair marketplace advantage while Plaintiff continues to suffer irreparable harm— for which there is no adequate remedy at law—from such unlawful infringing activity unless Defendant is enjoined by this Court.

77.     Defendant's infringement of the '532 Patent has damaged and will continue to damage Plaintiff, as the infringing activity is ongoing.

78.     Defendant ESI intends to continue their unlawful infringing activity, and Plaintiff continues to, and will continue to, suffer irreparable harm— for which there is no adequate remedy at law—from such unlawful infringing activity unless Defendant ESI is enjoined by this Court.

## JURY DEMAND

79. Plaintiff hereby demands a jury trial on all triable issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and seeks relief as follows:

1)     The Court declare that Defendant has infringed the exclusive rights granted to THREE H that are disclosed by the claims of the '532 Patent;

2)	The Court declare that the '532 Patent is valid and enforceable;

3)	The Court enjoin Defendant preliminarily and permanently against further infringement of the '532 Patent by Defendant, its officers, agents, servants, employees, affiliates, subsidiaries, licensees, successors and assigns, and those persons acting in concert with it, including related individuals and entities, customers, representatives, dealers, and distributors;

4)	That Defendant pay Plaintiff restitution, in an amount according to proof;

5)	That Defendant pay the Plaintiff's actual damages and losses;

6)	That Defendant account to Plaintiff for any and all gains, gross receipts, profits, and advantages attributed to or derived by it as a result of the activities complained of in this Complaint, according to proof;

7)	The Court award to Plaintiff damages in an amount adequate to compensate it for Defendant's infringement of the '532 Patent, but in no event less than a reasonable royalty pursuant to 35 U.S.C § 284;

8)	The Court award to Plaintiff its costs, and pre- and post-judgment interest on its damages, pursuant to 35 U.S.C. § 284;

9)	The Court declare this case to be exceptional and award Plaintiff its reasonable attorney fees and costs under 35 U.S.C. § 285;

10)	The Court declare that Defendant's acts of infringement, inducement of infringement, and/or contributory infringement of the '532 Patent have been willful;

11)	The Court increase all damages awarded to Plaintiff in this case to three times the damages amount found by the jury or assessed by this Court pursuant to 35 U.S.C. § 284; and

12)	The Court award to Plaintiff such other and further relief as the Court may deem just and proper.

Dated: January 31, 2017.

**SANTANGELO LAW OFFICES P.C.**

_____
Luke Santangelo

_____
David S. Kerr

125 South Howes, 3rd Floor
Fort Collins, CO 80521
Phone: (970) 224-3100
Email: lukes@idea-asset.com
Email: dkerr@idea-asset.com

*Attorneys for Plaintiff THREE H, LLC*